1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11    NICHOLAS SCOTT STONE,                    Case No.  1:19-cv-00703-DAD-HBK

12              Plaintiff,                     FINDINGS AND RECOMMENDATION TO
                                               GRANT IN PART AND DENY IN PART
13         v.                                  DEFENDANTS' EXHAUSTION-BASED
                                               MOTION FOR SUMMARY JUDGMENT[1]
14    T. ROBINSON, *et al.*,
                                               (Doc. No. 29)
15              Defendants.
                                               ORDER DENYING WITHOUT PREJUDICE
16                                             PLAINTIFF'S MOTIONS TO OPEN
                                               DISCOVERY AND FOR APPOINTMENT OF
17                                             COUNSEL INCORPORATED IN HIS
                                               OPPOSITION
18
                                               (Doc. No. 32)
19

20

21         Pending before the Court is the exhaustion-based motion for summary judgment filed on

22   behalf of Defendants Robinson, Ortega, Yang, David, Fernandez, Nacar, Marean and Flores on

23   December 29, 2020.  (Doc. No. 29).  Defendants attach supporting exhibits consisting of a

24   statement of undisputed facts (Doc. No. 29-3);  the declaration of J. Ceballos, the appeals

25   coordinator at California State Prison, Corcoran (Doc. No. 29-4); the declaration of R. Hart, a

26   policy and risk management employee of the California Correctional Health Care Services (Doc.

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2019).

No. 29-5); and the Declaration of Howard E. Moseley, the associate director of the Office of Appeals for the California Department of Corrections and Rehabilitation (Doc. No. 29-6). Plaintiff filed a construed opposition, which lists "undisputed facts" and attaches multiple appeals' records. (Doc. No. 32). Plaintiff does not include a declaration in support of his opposition. However, imbedded within Plaintiff's opposition are requests to open discovery and for appointment of counsel. (Doc. No. 32). Defendants filed a reply. (Doc. No. 33). For the reasons set forth below, the undersigned recommends Defendants' Motion for Summary Judgment be granted in part and denied in part as more fully set forth below.

## I. FACTS AND BACKGROUND

Plaintiff Nicholas Scott Stone ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (Doc. Nos. 11, 15). This action proceeds on Plaintiff's first amended complaint ("FAC") against: (1) Defendant Robinson for excessive force under the Eighth Amendment; (2) Defendants Robinson, Yang and Ortega for failure to protect under the Eighth Amendment; and (3) Defendants Robinson, Yang, Ortega, David, Abumeri, Fernandez, Nacar, Flores, Marean, and Ramadan for medical deliberate indifference under the Eighth Amendment. (Doc. No. 16 at 1-2). Consistent with the Court's Scheduling Order, Defendants Robinson, Yang, Ortega, David, Fernandez, Nacar, Flores, and Marean timely filed their exhaustion-based motion for summary judgment.[2] (Doc. No. 29). If granted in full, Defendants' summary judgment motion would dispose of all claims against defendants Robinson, Yang, Ortega, Fernandez, Nacar and Flores and one of Plaintiff's two claims against defendant Marean.

The claims in the FAC follow Plaintiff's altercation with a fellow inmate on September 5, 2018, when Defendant Robinson shot Plaintiff on the left side of his head from a tower window, causing Plaintiff to sustain permanent and serious head injuries that eventually required surgical intervention. (*See generally* Doc. No. 15). Plaintiff attributes liability to certain of the named Defendants for their failure to intervene and/or for encouraging the altercation, and to others for

---

[2] Defendant Abumeri has not been served and therefore has not moved for summary judgment on exhaustion grounds. See Doc. Nos. 17, 20.

failing to provide him with constitutionally adequate medical care immediately after he was shot. Plaintiff also claims medical deliberate indifference claims from separate incidents that occurred after he returned from his initial hospital treatment. (*Id.*).

More specifically, the FAC set forth the following facts. Plaintiff was transferred to Corcoran State Prison for a state court hearing. (Doc. No. 15 at 3-5). Plaintiff was moved into cell #149 pending his transfer back to his former institution and told he would be housed with inmate Ellis. (*Id.* at 5). Plaintiff and Ellis were removed to separate showers for a cell search. (*Id.*). Prior to returning Plaintiff and Ellis back to the cell, Defendants Ortega and Yang told inmate Delatorre in cell #148 that Ellis was a sex offender. (*Id.*). Ortega also referred to Ellis as "a peace [sic] of shit and has nothing coming." (*Id.*). Both Plaintiff and Ellis asked Ortega, Yang and Robinson for a bed move, which was denied. (*Id.*). After returning from the dayroom later that day and being escorted by Yang and Ortega back to cell #149, Plaintiff saw Ellis had packed up his personal belongings and heard Ellis tell Yang, Ortega and Robinson that he wanted to go on suicide watch. (*Id.* at 6). Yang, Ortega and Robinson refused to move Ellis. (*Id.*). When the door to cell #149 opened, Ellis was in "a fightin [sic] stance" and threw a punch toward Plaintiff. (*Id.*). Plaintiff "countered with a punch" and knocked Ellis to his knees. (*Id.*). Ellis than pulled Plaintiff to the ground. (*Id.*). After both of the inmates got back up, Plaintiff threw another punch and Ellis went back on the ground. (*Id.*). Yang then asked, "is that it?" and Plaintiff backed away from Ellis and turned to his left. (*Id.*). The following allegations are made against each Defendant.

**A. Claims in FAC as to T. Robinson**

When Plaintiff stood and turned to the watch tower, Defendant Robinson shot him in on the left side of his head. (Doc. No. 15 at 4, 6). The shot was "without warning" and Robinson exclaimed after firing the shot "fuck ya." (*Id.*). Plaintiff avers Robinson permitted the fight to occur and then purposely shot Plaintiff in the head instead of letting the other correctional officers who were present administer OC spray or attempt to break up the fight. (*Id.* at 10). Plaintiff further alleges Robinson misrepresented in the incident report that the shot was a ricochet rather than a direct shot, which delayed having Robinson sent to an outside hospital. (*Id.*). The former

assigned magistrate judge found the FAC stated cognizable claims of excessive force, failure to protect, and medical deliberate indifference against Robinson.  (Doc. No. 16 at 1-2).

### B.  Claims in FAC as to Y. Yang and M. Ortega

The allegations against correctional officers Y. Yang and M. Ortega are the same, and he does not distinguish between their actions.  (Doc. No. 15 at 4, 6, 10).   Both Yang and Ortega made comments about Ellis, which provoked Ellis into fighting.  (*Id.*).  Both were present when Plaintiff returned to his cell and encountered Ellis in a fighting stance and watched Ellis initiate the fight with Plaintiff, requiring Plaintiff to defend himself.  (*Id.*). Neither Yang nor Ortega intervened to stop the fight.  (*Id.*).  After Plaintiff was shot and laying on the floor bleeding, neither Yang nor Ortega ensured that Plaintiff was immediately sent to the hospital despite his urgent need for medical care.  Nor did they check on Plaintiff after he was returned to his cell from medical and instead left him in his cell "to die."  (*Id.* at 10).  The former assigned magistrate judge found the FAC adequately pled claims of failure to protect and medical deliberate indifference against Yang and Ortega.  (Doc. No. 16 at 1-2).

### C.  Allegations in FAC as to R. David

Plaintiff alleges R. David, a licensed vocational nurse at Corcoran State Prison, responded to the shooting**.**  (Doc. No. 15 at 4, 6-7, 10).  Plaintiff was seen that evening by Defendant Dr. Ramadan, though the FAC is unclear whether that visit was facilitated by David.   (*Id.* at 5-6). Regardless, Plaintiff claims David should have immediately sent him to an outside hospital.  (*Id.* at 10).  The Court found Plaintiff adequately pled a medical deliberate indifference claim against David.  (Doc. No. 16 at 2).

### D.  Claim in FAC as to A.J. Fernandez

Plaintiff alleges A.J. Fernandez, a correctional sergeant at Corcoran State Prison, witnessed Plaintiff following the shooting.  (Doc. No. 15 at 4, 6, 11).  Given that Plaintiff was bleeding profusely and had sustained a direct hit from a "40mm" to his head, Plaintiff claims Fernandez should have sent Plaintiff immediately to an outside hospital.  (*Id.* at 11).  The former assigned magistrate judge found the FAC adequately pled a medical deliberate indifference claim against Fernandez.  (Doc. No. 16 at 2).

### E.  Claim in FAC as to Catherine Nacar and Corazon Flores

Plaintiff alleges Catherine Nacar and Corazon Flores, registered nurses at Corcoran State Prison, failed to provide Plaintiff's prescribed "seiure" [sic] medication while he recovered from the shooting and the surgery that followed.  (Doc. No. 15 at 4, 9, 11).  Because he was confined to a wheelchair, Plaintiff was unable to reach the "pill line" and thus had no other means of obtaining his medication.  (*Id.* at 11).  Plaintiff claims Nacar and Flores knew he suffered from a "[s]erious medical need."  (*Id.*).  The former assigned magistrate judge found the FAC adequately pled a medical deliberate indifference claim against Nacar and Flores.  (Doc. No. 16 at 2).

### F.  Claim in FAC as to Brett Marean

Plaintiff alleges Brett Marean, a registered nurse at Corcoran State Prison, failed to provide Plaintiff's prescribed "seiure" [sic] medication while he recovered from the shooting and the surgery that followed, and failed to provide "proper treatment" when Marean found Plaintiff unconscious on his cell floor following the incident.  (Doc. No. 15 at 9, 11).  The former assigned magistrate judge found the FAC adequately pled a medical deliberate indifference claim against Marean.  (Doc. No. 16 at 2).

## II.  APPLICABLE LAW

### A.  Summary Judgment Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might

1  affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

2  U.S. 242, 248 (1986).

3        If the moving party meets its initial burden, the burden then shifts to the opposing party to

4  present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P.

5  56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that

6  there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.  The

7  party is required to tender evidence of specific facts in the form of affidavits, and/or admissible

8  discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P. 56(c);

9  *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a material issue

10  of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to

11  require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W.*

12  *Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

13  However, "failure of proof concerning an essential element of the nonmoving party's case

14  necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

15        The court must apply standards consistent with Rule 56 to determine whether the moving

16  party demonstrated there is no genuine issue of material fact and showed judgment to be

17  appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

18  "[A] court ruling on a motion for summary judgment may not engage in credibility

19  determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.

20  2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the

21  nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.

22  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  The mere scintilla of

23  evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported

24  summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

25        In an exhaustion-based summary judgment motion, the defendant bears the initial burden

26  of establishing "that there was an available administrative remedy, and that the prisoner did not

27  exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the

28  defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence

1   showing that there is something in his particular case that made the existing and generally

2   available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of

3   persuasion remains, however, with defendant. *Id.*

4        **B.  PLRA Exhaustion Requirement**

5        Under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

6   respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

7   confined in any jail, prison, or other correctional facility until such administrative remedies as are

8   available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is a condition precedent to filing a

9   civil rights claim.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); s*ee also McKinney v. Carey*, 311

10  F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a

11  precondition to judgment, but it did not.  The actual statute makes exhaustion a precondition to

12  suit."  (citation omitted)).  The exhaustion requirement "applies to all inmate suits about prison

13  life."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further, the nature of the relief sought by the

14  prisoner or the relief offered by the prison's administrative process is of no consequence.  *Booth*

15  *v. Churner*, 532 U.S. 731, 741 (2001).  And, because the PLRA's text and intent requires

16  "proper" exhaustion, a prisoner does not satisfy the PLRA's administrative grievance process if

17  he files an untimely or procedurally defective grievance or appeal.  *Woodford*, 548 U.S. at 93.  A

18  prisoner need not plead or prove exhaustion.  Instead it is an affirmative defense that must be

19  proved by defendant.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  A prison's internal grievance

20  process, not the PLRA, determines whether the grievance satisfies the PLRA exhaustion

21  requirement.  *Id.* at 218.

22       The PLRA recognizes no exception to the exhaustion requirement, and the court may not

23  recognize a new exception, even in "special circumstances."  *Ross v. Blake*, 136 S. Ct. 1850, 1862

24  (2016).  The one significant qualifier is that "the remedies must indeed be 'available' to the

25  prisoner."  *Id.* at 1856.  A defendant has the burden of showing that "*some* relief remains

26  'available.'"  *Brown v. Valoff*, 422 F.3d 926, 936-937 (9th Cir. 2005).  "To be available, a remedy

27  must be available 'as a practical matter'; it must be 'capable of use; at hand.'"  *Albino v. Baca*,

28  747 F.3d 1162, 1171 (9th Cir. 2014) (quoting *Brown*, 422 F.3d at 937).  "[A]dministrative

7

procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," or where an "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). And relief does not remain available if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. Where the court concludes that plaintiff has failed to exhaust available remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(a). *See Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### C.  CDCR Grievance Procedures

The California Department of Corrections and Rehabilitation's ("CDCR") administrative remedy process governs this action.[3]  *See* Cal. Code Regs. tit. 15, § 3084.1 (2016).  To exhaust available remedies regarding non-healthcare appeals, an inmate must proceed through three formal levels of review unless otherwise excused under the regulations.  *Id.* § 3084.5.  A prisoner initiates the exhaustion process by submitting a CDCR Form 602 "Inmate/Parolee Appeal" ("grievance").  *Id.*  §§ 3084.2(a), 3084.8(b) (quotation marks omitted).  The grievance must "describe the specific issue under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and shall describe their involvement in the issue."  *Id.* § 3084.2(a).  The inmate "shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment."  *Id.* § 3084.2(a)(4).

A separate grievance process is available for health care specific appeals.  Cal. Code Regs. tit. 15, §§ 3999.225 – 3999.237.  For disputes involving "health care policies, decisions, actions, conditions, or omissions," inmates may submit a grievance through the CDCR 602 HC form. Such grievances undergo only two levels of review – an institutional level of review and a

---

[3] The court cites to the regulations in force at the time relevant to this action.  These regulations were recently amended.  *See* Cal. Code Regs. tit. 15, § 3480-3487 (2021).

headquarters level of review –before being exhausted.  § 3999.226 (2019).  Health care grievances are subject to a headquarters' disposition before administrative remedies are deemed exhausted.  *Id.*

An inmate must submit an appeal within thirty calendar days of "[t]he occurrence of the event or decision being appealed" or "[u]pon first having knowledge of the action or decision being appealed."  *Id*. § 3084.6(c)(4).  Under certain circumstances, an appeal will be accepted after the deadline.  A late appeal may only be canceled where "the inmate or parolee had the opportunity to submit within the prescribed time constraints."  *Id*.  However, "at the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review."  *Id*. at § 3084.6(a)(3).  Further, under exceptional circumstances an appeal may be accepted for review beyond the 30-day deadline, for instance, when an inmate is medically incapacitated and unable to file an appeal.  *Id*. at § 3084.6(a)(4).

An appeal that does not comply with procedures may be rejected.  The rejection will advise the inmate of the reason for the rejection and advise the inmate how to cure the defect, if appropriate.  Where an appeal is cancelled due to a procedural error on the part of the inmate, administrative remedies remain available to the inmate—namely appealing the cancellation decision.  *See Cortinas v. Portillo*, 754 F. App'x 525, 527 (9th Cir. 2018) ("Because [plaintiff] could have appealed his cancellation decision . . . the improper cancellation of his appeal did not render administrative remedies effectively unavailable to him."); *Davenport v. Gomez*, No. 2:16-CV-1739, 2019 WL 636844, at *15 (E.D. Cal. Feb. 14, 2019) (noting that the appeals process is available where the plaintiff can raise the cancellation appeal to the next level).

### III.  FINDINGS OF FACT AND ANALYSIS

#### A.  Evidence Submitted by the Parties

##### 1.  Defendants' Evidence

Defendants' motion for summary judgment includes a statement of undisputed facts (Doc. No. 29-3).  All listed facts cite either to the declaration of J. Ceballos, the appeals coordinator at California State Prison, Corcoran (Doc. No. 29-4); the declaration of R. Hart, a policy and risk

management employee of the California Correctional Health Care Services (Doc. No. 29-5); or the Declaration of Howard E. Moseley, the associate director of the Office of Appeals for the California Department of Corrections and Rehabilitation (Doc. No. 29-6 at 1-4). The documents overall detail the appeals process within Plaintiff's prison and the appeals that Plaintiff undertook prior to and after filing the present suit.

### 2. Plaintiff's Evidence

As the non-moving party, Plaintiff is required to provide affidavits, and/or admissible discovery material demonstrating a factual dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. Summary judgment cannot be avoided by making conclusory allegations unsupported by factual data. *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). Local Rule 260(b) requires that the party opposing summary judgment "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."

Plaintiff's opposition consists of a list of "undisputed facts" and attaches his prison appeal records. (Doc. No. 32). The "facts" cite to no declarations, affidavits, or other forms of evidence, and thus do not comply with Federal Rule of Civil Procedure 56. In the section titled "facts," Plaintiff make requests for discovery and appointment of counsel, and largely ignores the disputed issue – whether Plaintiff fully exhausted administrative remedies. (Doc. No. 32 at 2-5). Plaintiff does not attest that he exhausted his claims against Defendants but rather that he made "many attempts" to do so. (*Id.* at 1). In violation of Local Rule 260(b), Plaintiff does not address Defendants' Statement of Undisputed Facts and does not admit or deny whether those facts are undisputed. Plaintiff's opposition provides no evidence and overall provides limited insight into whether Plaintiff exhausted his administrative remedies.

### C. Appeal Log No CCJ-0-18-02471/ CSPC-18-04939 Re: Custodial Officers

With regard to the custodial officers, the FAC attributes liability under the Eighth

10

1   Amendment to Robinson for excessive use of force for shooting Plaintiff in the head, to Yang and

2   Ortega for failure to protect and/or intervene to prevent the excessive use of force, and to

3   Robinson, Yang, Ortega, and Fernandez for failure to ensure that Plaintiff received proper and

4   timely medical treatment to an outside hospital immediately after the shooting.  Having reviewed

5   the record, the undersigned finds the following facts to be undisputed. Between the date Plaintiff

6   was shot – September 5, 2018 – and the date this action was filed – May 14, 2019 – Plaintiff

7   submitted one appeal using the standard 602 form pertaining to the actions of custody officers

8   Robinson, Yang, Ortega, and Fernandez.  (Ceballos Declaration, Doc. No. 29-4 ¶¶ 11, 14).  That

9   appeal, submitted on September 24, 2018, was assigned Appeal Log Number CCJ-0-18-02471/

10  CSPC-18-04939.  (*Id.* at 11-26; Ex. B).

11       The details of that appeal track the facts alleged in Plaintiff's FAC.  More specifically,

12  Plaintiff's appeal states he was engaged in a fight with another inmate on September 5, 2018, in

13  front of cell #149.  (*Id.* Ex. B).  After turning around to face the tower, he was immediately struck

14  on top of his head with a direct hit from the 40mm launcher.  (*Id.*).  Plaintiff alleges there was not

15  a riot and no weapons were involved.  (*Id.*).  After the shooting Plaintiff was transported to the

16  CTC where he received 10 staples but was not provided an x-ray or other basic medical care.

17  (*Id.*).

18       Plaintiff was moved from the CTC back to his cell.  (*Id.*).  Five hours later, Plaintiff went

19  "man-down" due to the pain and was taken to an outside hospital, given an x-ray that showed

20  bleeding in his brain, and then underwent surgery.  (*Id.*).  He received 38 stitches and was sent

21  back to his housing unit.  (*Id.*).  Plaintiff further alleged that prison and medical staff intentionally

22  delayed his medical treatment.  (*Id.*).  Plaintiff's appeal does not allege any staff member failed to

23  intervene to stop the fight and/or protect him or failed to intervene in the excessive use of force.

24  Nor does Plaintiff claim any staff members refused to provide him with pain medication

25  following his return after he underwent surgery.  (*Id.*).

26       Plaintiff's appeal was rejected on September 26, 2018 because it had not been submitted

27  on "departmentally approved forms under Cal. Code Regs. tit. 15, § 3084.6(b)(14) and because

28  Plaintiff failed to date the appeal."  (*Id.* ¶ 16).  Plaintiff was instructed how to cure the

11

1   deficiencies and was provided 30 days to do so.  (*Id.*).   On October 18, 2018, the California

2   Correctional Institute Appeals Coordinator received Plaintiff's re-filed appeal.  (*Id.* ¶ 18).

3   Plaintiff was notified on October 29, 2018 that his Second Level appeal was referred by the

4   "Hiring Authority" to the Office of Internal Affairs ("OIA") and he was advised he would be

5   notified upon completion whether the allegations were sustained, not sustained, unfounded,

6   exonerated, or if there was no finding.[4]  (*Id.*).  He was further informed that his appeal is deemed

7   fully exhausted only after a decision is reached at the Third Level of Review.

8         OIA then engaged in a lengthy and extensive investigation concerning Plaintiff's

9   allegations.  (*Id.* ¶ 19).  On December 19, 2018, approximately six weeks after he submitted his

10  corrected appeal but prior to receiving a decision from the second level review, Plaintiff filed an

11  appeal to the Office of Appeals ("OOA").  (Moseley Declaration, Doc. No. 29-6 ¶ 10).  The OOA

12  is the third and final level of review for prisoner health-related appeals.  (*Id.* ¶ 1).  Plaintiff's

13  appeal was rejected on March 26, 2019 because it was illegible and did not contain a required

14  copy of Plaintiff's original First Level appeal, likely because the OIA still possessed the original

15  as its investigation remained pending.  (*Id.* ¶ 10).  Plaintiff was provided thirty days to re-file with

16  the original First Level appeal attached.  (*Id.*).  On June 4, 2019, <u>after</u> Plaintiff filed the instant

17  action, Plaintiff re-filed his appeal to the OOA.  (*Id.* ¶ 11).  The appeal again was rejected on July

18  15, 2019 because it was illegible, attached copies instead of the original 602 and failed to show a

19  First or Second Level of Review.  (*Id.*).  Plaintiff was provided another thirty days to resubmit the

20  appeal by using the prison approved forms, to be filled out either legibly by hand or by typing.

21  (*Id.*).  On September 16, 2019, Plaintiff submitted an appeal, outside the 30-day period and

22  lacking an institutional log number.  (*Id.* ¶ 12).  The untimely appeal was assigned "Appeal Log

23  No. 1900407" and was cancelled because it "duplicated Institutional Log No. COR-18-04939

24  /CCI-18-02471," the previously rejected appeal.  (*Id.*).

25        On July 10, 2020, CCI advised Plaintiff that the Second Level investigation concluded

26

---

27  [4] While Plaintiff's appeal was sent to OIA, it was not "granted" or "partially granted."  The referral to OIA alone did not exhaust Plaintiff's administrative remedies.  *See Brown v. Valoff*, 422 F.3d 926, 939 (9th Cir.

28  2005).

that "staff did not violate policy" and that he could now appeal the matter to Third Level. (Ceballos Declaration, Doc. No. 29-4 ¶ 20).  There is no record of Plaintiff pursuing that appeal to the Third Level of review.  (*Id.* ¶ 22; Moseley Declaration, Doc. No. 29-6 ¶ 13).  On August 17, 2020, Plaintiff was again sent another Second Level response, with the Hiring Authority's signature that was missing from the July 10, 2020 response, informing him that the investigation was now complete and that staff did not violate policy.  (Ceballos Decl., ¶ 21, Ex. B).  Plaintiff was apprised he had 30-days to appeal to the Third Level of Review.  (*Id.*).  No Third Level reviews were filed by Plaintiff.  (Mosley Decl., ¶ 13).  Plaintiff did not file any other 602 appeals referencing the allegations in the FAC other than Appeal Log No. CCJ-0-18-02471/ CSPC-18-04939.  (Ceballos Decl., ¶ 22).

Defendants seek dismissal of all claims against custody officers Defendants Robinson, Ortega, Yang and Fernandez in relation to Log No. CCJ-0-18-02471/ CSPC-18-04939.  (Doc. No. 29-2 at 18).  First, Defendants point out that the appeal never mentioned a failure to protect or failure to intervene claim against any of the named defendants.  (*Id.*).  It therefore did not sufficiently place the institution on notice of this claims.  Second, Defendants argue Plaintiff prematurely initiated the suit, because he filed the suit before he completed the exhaustion process.  (*Id* at 18-19).  Third, Defendants submit that Plaintiff never exhausted the claims he identified in the 602 appeal because he never corrected the errors for which his Third Level appeals were initially rejected, and then never filed a Third Level appeal after receiving the rejection of Second Level appeal.  (*Id*. at 19).

The undisputed facts before the Court demonstrate Plaintiff did exhaust his Eighth Amendment claim for excessive use of force as to Defendant Robinson and his Eight Amendment deliberate indifferent medical claims against Defendants, Robinson, Yang, Ortega and Fernandez, but failed to exhaust his claims of failure to protect and/or intervene against Defendants Robinson, Yang, and Ortega.  Admittedly, Log No CCJ-0-18-02471/ CSPC-18-04939 was not exhausted to the Third Level of Review.  Plaintiff does not claim that he exhausted his administrative remedies against Defendants Robinson, Yang, Ortega, or Fernandez.  (Doc. No. 32).  Instead, he argues prison officials thwarted his ability to get an original copy of his First

1   Level appeal, resulting in his Third Level appeal's rejection.  (*Id.* at 1-3).

2          In an exhaustion-based summary judgment motion, defendants bear the burden of

3   establishing "that there was an available administrative remedy, and that the prisoner did not

4   exhaust that available remedy."  *Albino*, 747 F.3d 1162, 1172 (9th Cir. 2014).  Once shown, "the

5   burden shifts to the prisoner to come forward with evidence showing that there is something in

6   his particular case that made the existing and generally available administrative remedies

7   effectively unavailable to him."  *Id.*

8          The undisputed facts show Plaintiff lacked an "available" administrative remedy to

9   pursue his appeals through the third level.  CDCR regulations at the time Plaintiff's appeal was

10  pending mandated that second level "appeals shall be responded to and returned to the inmate or

11  parolee by staff <u>within 30 working days</u>."  CAL. CODE REGS., tit. 15 § 3084.8(c)(2) (emphasis

12  added).  In "exceptional" circumstances where that deadline cannot be met, the appellant "shall

13  be provided an explanation of the reasons for the delay and the estimated completion date."

14  CAL. CODE REGS., tit. 15 § 3084.8(e).  Plaintiff did not receive a signed response to his

15  Second Level review until August 17, 2020—some 669 days after he received notice that his

16  Second Level review was being submitted to OIA.  After 62 days had passed and Plaintiff had

17  not received a timely response to his Second Level review, he filed a Third Level review to

18  OOA, but it was rejected because Plaintiff did not attach the original 602 appeal.  Plaintiff could

19  not attach the original 602 appeal because it remained with OIA.  Plaintiff nonetheless

20  attempted to try to cure the deficiencies only to have his attempted corrected appeals rejected.

21  Plaintiff waited over seven months between the acceptance of Plaintiff's second level appeal on

22  October 18, 2018 before he filed the instant action on May 24, 2019.  Defendants present no

23  evidence that officials provided Plaintiff an explanation for the excessive 669-day delay.  When

24  "prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have

25  exhausted available administrative remedies."  *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th

26  Cir. 2017).  When a plaintiff "submits evidence that he attempted to properly utilize the appeals

27  process but never received his 602 appeal back, Defendants must do more than point out that

28  Plaintiff never completed the prison grievance process … and are not entitled, at this time, to

1  dismissal for failure to exhaust." *Burrows v. Gifford*, No. 106CV0602AWIWMWPC, 2007 WL

2  2827779, at *2 (E.D. Cal. Sept. 27, 2007).

3      Here, Plaintiff provides evidence he attempted to use the appeals process but that prison

4  officials failed to timely process his Second Level appeal and failed to provide him with any

5  explanation for the delay.  The Court therefore finds pursuant to Ninth Circuit precedent that

6  Plaintiff's appeal Log No CCJ-0-18-02471/ CSPC-18-04939 was adequately exhausted.

7  Because the exhausted appeal alleges excessive force stemming from being shot in the head and

8  the custodial officer's failure to provide him with timely and proper medical treatment,

9  Robinson's exhaustion-based motion for summary judgment on Plaintiff's excessive use of

10  force claim should be denied as well as the medical deliberate indifference claims premised on

11  the delay by custodial officers Robinson, Yang, Ortega, and Fernandez in sending Plaintiff for

12  outside medical treatment.

13      However, Appeal Log No CCJ-0-18-02471/ CSPC-18-04939 does not mention, directly

14  or indirectly, any claims regarding a failure to protect and/or intervene.  While a grievant "need

15  not include legal terminology or legal theories" they must provide adequate information to alert

16  the intuition of the alleged wrongdoing.  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).

17  The undersigned agrees with Defendants that Plaintiff's exhausted grievance solely centers on

18  the claim of excessive force and deliberate indifference but it did not alert officials to a failure to

19  protect and/or intervene claims.  Thus, the undersigned finds Plaintiff's Eight Amendment

20  failure to protect and/or intervene claims should be dismissed for failure to exhaust as to

21  Defendants Yang and Ortega.

22      **D.  602 HC Appeals Re: Healthcare Defendants**

23      Regarding the medical defendants, the FAC alleges the following Eight Amendment

24  deliberate indifference claims:  as to David, a claim for failing to provide Plaintiff with an x-ray

25  or send Plaintiff to outside hospital after seeing the large pool of blood after the shooting; as to

26  Defendants Nacar and Flores, failure to provide him with his seizure medications when he was

27  confined to a wheelchair and unable to reach the pill line; and as to Defendant Marean, failure to

28  provide Plaintiff with his seizure medications and failure to provide treatment after finding

15

Plaintiff unconscious on his cell floor.  Having reviewed the record, the Court finds the following facts to be undisputed.  Plaintiff submitted numerous appeals concerning his health care.  (*See generally* Doc. No. 29-5 ¶¶ 13-20; Exs. B-H).  Plaintiff's first health care appeal, Log No. COR-HC-18-001430, was submitted on September 7, 2018. (Doc. No. 29-5, Ex. E).  In that appeal, – two days after the shooting – Plaintiff allegedly fainted and fell in his cell.  (*Id.*).  Despite feeling dizzy and suffering vision problems, Plaintiff claimed no medical check occurred to assess his condition and determine whether additional brain bleeding occurred.  (Doc. 29-5 at 40-46).  That appeal was denied at the First Level of Review on November 14, 2018.  (Doc. No. 29-5 ¶ 16).  Plaintiff appealed that decision to the Second Level where it was denied on February 26, 2019.  (*Id.*).  The Second Level of Review's denial fully exhausted Plaintiff's Log No. COR-HC-18-001430 appeal.

Plaintiff's second health care appeal, Log No. COR-HC-18-001431, was submitted on September 18, 2018.  (Doc. No. 29-5, Ex. B).  That appeal sought "money damages" for "gross negligence" in the medical care he received immediately following the shooting.  (*Id.*).  Plaintiff's appeal names no specific individuals and instead argues that "all Corcoran medical care" were responsible.  (*Id.*).  That appeal was rejected because Plaintiff "exceeded the allowable number of filings within the applicable timeframe."  (Doc. No. 29-5 ¶ 13).  Inmates are only permitted to one health appeal every 14 days, and Plaintiff had already filed appeal Log No. COR-HC-18-001430.  (*Id.* ¶¶ 14, 16).  The rejection advised Plaintiff he could either re-file with an explanation for why the appeal was not excessive or otherwise re-file within 30 days.  (*Id.*).  Plaintiff did not resubmit the appeal and thus did not exhaust it.  (*Id.*)

Plaintiff's third health care appeal, titled COR HC 18001459, was submitted on September 19, 2018.  (Doc. No. 29-5, Ex. C).  That appeal asserted Plaintiff was not being provided his prescribed painkillers and that his head bandage was not being re-dressed correctly.  (*Id.*).  On September 26, 2018, that appeal was rejected because Plaintiff again "exceeded the allowable number of grievances within the applicable timeframe."  (*Id.*).   The rejection letter instructed Plaintiff he could either resubmit the appeal with an explanation for why it was not excessive, or "resubmit within 30 days."  (*Id.* at 13).  Plaintiff did not resubmit his appeal and

1    thus did not exhaust it through the final level.  (*Id.* ¶ 14).

2            Plaintiff's fourth appeal, titled COR HC 18001486, was received on September 25, 2018.

3    (*Id.* ¶ 15).  That appeal claimed Plaintiff was being denied "lifesaving medications."  (*Id.*).  On

4    September 26, 2018, that appeal was rejected on the same basis of exceeding the number of

5    health appeals allowed within 14 days.  (*Id.*).  Like his other rejection, Plaintiff was told he could

6    either resubmit the appeal explaining why it was not excessive, or "resubmit within 30 days."  (*Id.*

7    at 25).  Plaintiff did not resubmit his appeal and thus did not exhaust it through the final level.

8    (*Id.* ¶ 15).

9            Plaintiff's fifth appeal, titled Log No. COR-HC-18-001492, was accepted on September

10   26, 2018.  (*Id.* ¶ 17).  Plaintiff stated he had suffered from "deliberate indifference" when he was

11   not taken directly to the hospital after being shot.  (Doc. 29-5. at 50-57).  The appeal states there

12   was "no way" that prison guards were unaware of the severity of the shooting injury.  (Doc. No.

13   29, Ex. F).   That appeal was denied at the First Level of Review on November 30, 2018.  (*Id.*).

14   Plaintiff appealed that decision to the Second Level of Review, and it was denied on February 26,

15   2019.  (*Id. ¶ 17*).  The Second Level of Review's denial fully exhausted Plaintiff's appeal

16   assigned Log No. COR-HC-18-001492.

17           Consequently, only two of Plaintiff's health care appeals relevant to the present dispute,

18   Log Nos. COR-HC-18001430 and COR-HC-18-001492, were fully exhausted.  (Doc. No. 29-5 ¶¶

19   16-17; Exs. E-F).

20           Defendants do not advance an exhaustion-based defense regarding Plaintiff's claim of

21   deliberate indifference regarding Defendant David's failure to send Plaintiff for an x-ray or an

22   outside hospital after seeing the large pool of blood immediately after the shooting, or his claim

23   regarding Defendant Marean's failure to provide adequate medical care after discovering Plaintiff

24   had fainted in his cell.  Doc. No. 29-2 at 23.  Both claims appear to have been exhausted by COR-

25   HC-18-001492[5] and COR HC 180001430.  Defendants submit, however, that Plaintiff's claims

26   _____

27   [5] Arguablely, this healthcare appeal also exhausted the claims against medical deliberate indifference as to
     the custodial defendants Robinson Ortega, Yang, Fernandez to the extent that defendants contend the 602
     appeal against the custodial officer defendants did not exhaust these claims.  Admittedly, Plaintiff did not

28   name specific Defendants in this appeal as required by Cal. Code Regs. tit. 15, § 3084.2(a) (stating a

1   against Marean, Nacar and Flores for their alleged failure to bring Plaintiff his medications after

2   his return from the hospital are not exhausted.  (Doc. No. 29-2 at 20).  The undersigned agrees.

3         The undisputed facts before the Court demonstrate Plaintiff failed to exhaust

4   administrative remedies against Defendants Marean, Nacar, and Flores as to Plaintiff's claim of

5   medical deliberate indifference for failure to provide prescribed medication.  Plaintiff filed one

6   appeal relating to these claims:  COR HC 18001486.  (Doc. No. 29-5 ¶ 15).  That appeal claimed

7   Plaintiff was being denied "lifesaving medication as prescribed by doctor" because unnamed

8   medical staff was not bringing it to him and he could not access it himself with his wheelchair.

9   (*Id.* Ex. D).  The claims in that appeal mirror those alleged against Marean, Nacar and Flores in

10  Plaintiff's complaint.  (*Id.*).  The appeal was rejected on September 26, 2018 on the same basis of

11  exceeding the number of health appeals allowed within 14 days.  (Doc. No. 29-5 ¶ 15).  Like his

12  other rejection, Plaintiff was told he could either resubmit the appeal explaining why it was not

13  excessive, or "resubmit within 30 days."  (*Id.* at 25).  Plaintiff did not resubmit his appeal to

14  explain why it was not excessive nor did he resubmit it in the 30-day period.  (*Id.* ¶ 15).

15        Pursuant to California Code of Regulation 15 § 3999.226(c), an inmate "has the right to

16  submit one health care grievance every 14 calendar days, unless it is accepted as an expedited

17  grievance.  The 14 calendar day period shall commence on the calendar day following the

18  grievant's last accepted health care grievance."  Plaintiff's rejected grievance was received on

19  September 25, 2018, 13 days after Plaintiff's September 12, 2018 was accepted.  (No. 29-5 at ¶¶

20  14, 15, 17).  Plaintiff's appeal was therefore properly rejected because it came within 14 days of

21  the earlier accepted appeal.

22        The undisputed facts further demonstrate that Plaintiff was provided administrative

23

24  grievance "shall list all staff member(s) involved and shall describe their involvement in the issue.").  The
    United States Supreme Court, however, has held that "exhaustion is not *per se* inadequate simply because
    an individual later sued was not named in the grievances."  *Jones v. Bock*, 549 U.S. 199, 219 (2007).  The

25  Ninth Circuit Court of Appeals expanded on *Jones* and concluded that there must be a "sufficient
    connection" between the claim in the administrative grievance and the unidentified defendants to give

26  prison officials "notice of the alleged deprivation" and an "opportunity to resolve it."  *Reyes v. Smith*, 810
    F.3d 654, 659 (9th Cir. 2016).  Here, there was sufficient connection between the grievance and the now-

27  named Defendants such that that prison officials would have been on notice of the allegations and had the
    opportunity to address them.  Plaintiff's grievance was clearly about the night he was shot and the medical

28  care he alleges he did not receive in the immediate aftermath.

1   procedures within which to appeal.  The rejection letter instructed Plaintiff how he could

2   resubmit his appeal.  He was therefore afforded an "available" opportunity to exhaust but failed

3   to do so.  Because Plaintiff did not explain why the appeal was not excessive and did not

4   resubmit the appeal after thirty days and this is the only appeal that addresses the medical

5   deliberate indifference claims against Defendants Marean, Nacar, and Flores stemming from

6   their alleged failure to provide Plaintiff's his prescribed medications, Plaintiff has not exhausted

7   his administrative remedies as to these claims against these Defendants and they should be

8   dismissed.

9               **E.  Plaintiff's Request for Discovery**

10          Plaintiff's motion includes a request to open discovery so he can determine "the identity

11   of other staff members involved" and identify potential witnesses.  (Doc. No. 32 at 2).

12   Discovery in this matter is currently stayed pending this motion's resolution.  (Doc. No. 34).

13   The information Plaintiff seeks to discover is not relevant to the exhaustion issue.  The Court

14   therefore denies Plaintiff's request.  A modified discovery and scheduling order will issue after

15   the stay is lifted, if appropriate, to permit Plaintiff an opportunity to seek relevant discovery

16   from Defendants.

17              **F.  Plaintiff's Motion for Appointment of Counsel**

18          Plaintiff's opposition includes a request that the Court provide him counsel.  (Doc. No.

19   32 at 5).  Plaintiff argues appointment is warranted because the ongoing pandemic has limited

20   his law library access and that the shooting resulted in a brain injury.  *(Id.)*.

21          The United States Constitution does not require appointment of counsel in civil cases.

22   *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) (explaining *Bounds v. Smith*, 430 U.S. at 817, did

23   not create a right to appointment of counsel in civil cases).  This Court has discretionary

24   authority under 28 U.S.C. § 1915 to appoint counsel for an indigent to commence, prosecute, or

25   defend a civil action.  *See* 28 U.S.C. § 1915(e)(1) (stating the court has authority to appoint

26   counsel for people unable to afford counsel); *see also United States v. McQuade*, 519 F.2d 1180

27   (9th Cir. 1978) (addressing relevant standard of review for motions to appoint counsel in civil

28   cases) (other citations omitted).  However, motions to appoint counsel in civil cases are granted

19

1    only in "exceptional circumstances." *Id.* at 1181.  The Court may consider many factors to

2    determine if exceptional circumstances warrant appointment of counsel including, but not

3    limited to, proof of indigence, the likelihood of success on the merits, and the ability of the

4    plaintiff to articulate his or her claims *pro se* in light of the complexity of the legal issues

5    involved.  *Id.*; *see also Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn in*

6    *part on other grounds on reh'g en banc*, 154 F.2d 952 (9th Cir. 1998).  The Court "is not

7    required to articulate reasons for denying appointment of counsel if the reasons are clear from

8    the record." *Johnson v. United States Dept. of Treasury*, 939 F.2d 820, 824 (9th Cir. 1991).

9        Although Plaintiff is proceeding *pro se* and is incarcerated, he faces the same obstacles

10   all *pro se* prisoners face.  Challenges preparing for trial, such as limited law library access, "are

11   ordinary for prisoners pursuing civil rights claim" and cannot form the basis for appointment of

12   counsel.  *Courtney v. Kandel*, 2020 WL 1432991, at *1 (E.D. Cal. Mar. 24, 2020).  If Plaintiff's

13   limited law library access restricts his ability to meet a court-ordered deadline he may move for

14   an extension at that time.

15       Plaintiff does not provide any evidence of his brain injury or explain how it has inhibited

16   his ability to prosecute this case.  Indeed, a review of the pleadings filed by Plaintiff to date

17   show he can articulate his claims in this case.  See *Brown v. Reif*, 2019 WL 989874, at *2 (E.D.

18   Cal. Mar. 1, 2019) (denying appointment of counsel where plaintiff's filings demonstrate ability

19   to properly litigate case despite mental illness).  Plaintiff has capably filed motions and his FAC

20   plausibly stated a claim to survive an initial screening.  Plaintiff has not shown exceptional

21   circumstances warrant appointment of counsel at this stage of the proceedings.  Should this case

22   progress and Plaintiff's circumstances change such that he is able to demonstrate exceptional

23   circumstances, he may renew his motion for appointment of counsel at that time.

24       **E.  Defendants' Request for Evidentiary Hearing**

25       Defendants request an evidentiary hearing to resolve any disputes should the Court find

26   "any genuine disputes of material fact regarding exhaustion."  (Doc. No. 29-2 at 18).  The

27   undersigned, however, finds the evidence regarding which grievances were and were not

28   exhausted to be beyond dispute.  A hearing is therefore unnecessary.  If Defendants disagree

with these Findings and Recommendations they may file objections prior to the district judge's *de novo* review.

### IV. CONCLUSION

Accordingly, it is **ORDERED:**

1. Plaintiff's motion to open discovery incorporated in his construed opposition (Doc. No. 32) is DENIED without prejudice;

2. Plaintiff's motion for appointment of counsel incorporated in his construed opposition (Doc. No. 32) is DENIED without prejudice;

It is further **RECOMMENDED:**

Defendants' Motion for Summary Judgment be GRANTED TO THE LIMITED EXTENT that the following claims and defendants be dismissed due to Plaintiff's failure to exhaust his administrative remedies:

   a. The failure to protect claim against Defendants T. Robinson be dismissed;

   b. The failure to protect claim against Y. Yang be dismissed:

   c. The failure to protect claim against M. Ortega be dismissed;

   d. The medical deliberate indifference claim against Catherine Nacar be dismissed and Catherine Nacar to be dismissed as a Defendant;

   e. The medical deliberate indifference claim against Corazon Flores be dismissed and Corazon Flores to be dismissed as a Defendant;

   f. The medical deliberate indifference claim against Brett Marean, solely to the allegation that he failed to provide Plaintiff his prescribed medications, be dismissed;

   g. That all other claims and Defendants proceed in this action.

### NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the

specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


Dated:    September 24, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE